IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUN 17 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| MICHELE L. HONDROS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| HEWLETT PACKARD | § | |
| ENTERPRISE, | § | |
| CENTERPOINT ENERGY CORP., | § | |
| UNITED LAUNCH ALLIANCE, LLC, | § | |
| | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF, MICHELE L. HONDROS (*hereinafter referred to as* "Plaintiff"),

filing this Complaint, and for cause shows:

I.

PARTIES & SERVICE REQUESTED

Plaintiff, MICHELE L. HONDROS, is an individual natural citizen of the United States,

residing in Houston, Harris County, Texas.

Defendant HEWLETT-PACKARD ENTERPRISE engages in the business of producing

and selling personal computers, computing devices, printers, as well as super computers, and other

technical-related products and services.  On information, HEWLETT-PACKARD ENTERPRISE

1

is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.

HEWLETT-PACKARD ENTERPRISE may be served with process at its registered agent: CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

Defendant CENTERPOINT ENERGY CORPORATION owns the utility poles in and around the municipality known as Nassau Bay, located in Harris County, Texas which is a suburb of the Houston Metropolitan Area.  Plaintiff is a consumer of CENTERPOINT ENERGY CORPORATION products and services.

Defendant CENTERPOINT ENERGY CORPORATION may be served with process of service by serving its registered agent: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

UNITED LAUNCH ALLIANCE, LLC (A/K/A ULA, LLC A/K/A UNITED SPACE ALLIANCE, LLC, A/K/A USA) is listed as a 50/50 Joint Venture between The Boeing Company and Lockheed Martin Corporation, a limited liability corporation.  On information, The Boeing Company relocated its headquarters from the State of Washington to Chicago, Illinois.  Lockheed Martin Corporation maintains it headquarters in Bethesda. Maryland, as the second largest military-industrial business in the world.

UNITED LAUNCH ALLIANCE, LLC may be served with process by serving its registered agent: Corporation Service Company D/B/A Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

2

II.

## JURISDICTION AND VENUE

Plaintiff, MICHELE L. HONDROS, is a natural citizen of the United Sates, residing in Houston, Harris County, Texas.

Named Defendants herein maintain offices and/or conduct legally-recognized form of commerce within the State of Texas, within the United States and/or abroad.

Insofar as Plaintiff's seeks relief for violations of her civil rights pursuant to the Constitution of the United States of America, jurisdiction in this United States District Court is proper.

III.

## JURY DEMAND AND DISCOVERY PLAN

Plaintiff, MICHELE L. HONDROS (*hereinafter referred to as* "Plaintiff"), demands a jury trial. The requisite fee for a trial by jury has be paid at the time of filing by Plaintiff.

Plaintiff requests a Level Three Discovery Plan.

IV.

## STATEMENT AND BACKGROUND

*"The official start of the post-9/11 era assault on core civil liberties was the late-2001 enactment of the Patriot Act."* (Attributed to Edward Snowden.)

"Patriot," as it is used in the title of the Patriot Act, actually means: **P**roviding **A**ppropriate **T**ools **R**equired to **I**ntercept and **O**bstruct **T**errorism. The Patriot Act appears to have been carefully crafted to circumvent the Constitution of the United States, obliterating the Bill of Rights, which succinctly delivers protections and authorities upon which these United States were founded.

3

President Dwight D. Eisenhower, in 1961 delivered what has become known as his "Farewell Speech to the American People," easily read to be a *warning*, which states in part:

> *"In the councils of government, we must guard against the acquisition of unwarranted influence, whether sought or unsought, by the military industrial complex. The potential for the disastrous rise of misplaced power exists and will persist."*

> *"We must never let the weight of this combination endanger our liberties or democratic processes. We should take nothing for granted. Only an alert and knowledgeable citizenry can compel the proper meshing of the huge industrial and military machinery of defense with our peaceful methods and goals, so that security and liberty may prosper together. ..."*

ART. I, Amendment I-*Freedom of Religion, Speech, and the Press*; ART. I, Amendment IV.-*Protection from Unreasonable Searches and Seizures*; ART. I, Amendment V.-*Protection of Rights to Life, Liberty, and Property*; ART. I, Amendment VI-*Right to Confront Accusers; To be Informed of Charges; and Right to a Speedy Trial.*

Plaintiff is not an enemy of her country, nor any threat whatsoever.

In the instant matter, surveillance of, and retaliatory acts committed against Plaintiff is extreme and personal, as Plaintiff alleges herein.  It is particularly difficult to imagine the acts for which Plaintiff seeks relief in the year of *2021*, reflecting on the words of President Lyndon Baines Johnson in March of *1965*, just days after Congressman John Lewis was beaten nearly to death while simply walking across the Edmund Pettis Bridge in Alabama, Johnson addressed a Joint Session of Congress:

> *There is no cause for pride in what has happened in Selma.  There is no cause for self-satisfaction in the long denial of equal rights of millions of Americans.  But there is cause for hope and for faith in our democracy in what is happening here tonight... In our time we have come to live with moments of great crisis. Our lives have been marked with debate about great issues; issues of war and peace, issues of prosperity and depression.  But rarely are we met with a challenge, not to our growth or abundance, our welfare or our security, but rather to the values and the purposes and the meaning of our beloved Nation ...*
> *This bill will strike down restrictions to voting in all elections—Federal, State, and local—which have been used to deny Negroes the right to vote ...*
> *This bill will establish a simple, uniform standard which cannot be used, however ingenious the effort, to flout our Constitution ...*

4

*Because all Americans just must have the right to vote.  And we are going to give them that right.*

Lyndon Johnson, President. (Speaking on The Voting Rights Act of 1965; March 15, 1965.) Johnson is also speaking of matters which *today* would meet the criteria for prosecution as Hate Crimes.

PLAINTIFF seeks relief for damages which include but are not limited to damages sustained as the result of Warrantless Surveillance; Harassment; Harassment On the Internet; Fraudulent Concealment by Use of the Internet; Gross and repeated instances of Invasion of Privacy; Theft of Property; Vandalism; Damage to Real Property; Damage to Personal Computers; Damage to Electronic Devices; Destruction of Closed Circuit Security Cameras; Hacking into closed circuit security camera system; Manipulating and/or altering personal property and real property; Interfering with radio transmissions; Placing surveillance cameras and listening devices inside Plaintiff's residence and on her real property; and Placing surveillance equipment and other devices on utility poles on and around Plaintiff's Real Property; Projecting frightening images onto Plaintiff's real property.

Plaintiff alleges all aforementioned acts for which Plaintiff makes complaint and seeks relief, have caused Plaintiff—as said acts would cause any other reasonable individual—to live in fear and terror.  Plaintiff alleges these acts have been performed unlawfully, and for the most part, apparently, intentionally, as any reasonably prudent individual should know that conduct so outrageous which is not tolerated in a civilized society would, and has caused Plaintiff great emotional distress.

Plaintiff invokes *United States v. Moalin* 13-50572 (9th Circuit), notice of surveillance is required, and illustrated in cases cited by the *Moalin* Court in its Opinion—specifically *Dalia*— that only when surveillance requiring covert entry by law enforcement is the only, and safest

manner to conduct electronic surveillance ((See *Dalia*, 441 U.S. 238 (1979), the court required the State to remove "bugging" equipment within a certain and specific period of time; and that the State [had a duty to] inform the Defendant of the bugging operation.)

Plaintiff asserts that Defendants' acts at no time have been lawful, rather a continuing cover-up intended to silence Plaintiff, which Defendants have no intention of stopping, regardless of the damage Defendants' acts have caused in the past, and continue to cause, which will have lasting negative impacts upon Plaintiff's life in perpetuity.

Based on information, Plaintiff has been unlawfully surveilled beginning as early as 2003, however Plaintiff was unaware of said surveillance at the time. Then, in March of 2009 Plaintiff was "spammed" or a "spearfishing" incident took place. Still Plaintiff did not suspect she was targeted for any such activity because, as does the general population, Plaintiff is unaware of any actions(s) she has or may have taken which could provoke any entity to surveil her, and certainly at no time would harassing or terrorizing Plaintiff, or stealing her personal property be lawful.

Plaintiff alleges the retaliatory acts for which she makes complaint stem from emails and/or blog postings she created which include joking about Jeff Skilling and what is now known as The Enron Debacle; Joked about Terrorism Alert Levels; Made comments about the Financial Crisis of 2008; Expressed disdain about the insurance industry; Maintained contact with expat friends while they were abroad; Sought to recover damages related to two incidents whereupon Plaintiff was defrauded; and Toyed with the idea of writing a memoir.

Plaintiff did these things expecting she, as should any American, had the right to speak and express herself freely; and had a reasonable degree of privacy while so doing.

More simply stated, retaliatory acts were undertaken against Plaintiff because she expressed herself using the internet, and not concealing her identity, or even attempting to do so.

6

The acts of retaliation came from individuals and/or entities with affiliations to corporate entities named herein.

Plaintiff asserts that Defendants named herein, and those who may still be named, were emboldened by an overt presumption the unlawful acts they had committed, and have continued to commit, would be carried out with impunity by virtue of Defendant's unique *ability* to conceal their identities and actions.

Plaintiff alleges that when Defendants realized they had actually shared their own unlawful acts and misdeeds, as well as their intent to commit further unlawful acts, a cover up ensued which is ongoing.

Plaintiff is not an employee of HEWLETT-PACKARD ENTERPRISE, CENTERPOINT ENERGY, INC. (*hereinafter referred to as* "CENTERPOINT), LOCKHEED MARTIN CORPORATION (*hereinafter referred to as* "LOCKHEED") or THE BOEING COMPANY (*hereinafter referred to as* "BOEING") or UNITED LAUNCH ALLIANCE (*hereinafter referred to as* "ULA"), yet individuals who were affiliated with LOCKHEED, BOEING and/or ULA were either tasked by LOCKHEED, ULA, BOEING, corporate officers thereof, and/or others, or took it upon themselves to conduct what may now only be described in hindsight as *debriefing* Plaintiff over matters of which Plaintiff was not even aware nor was Plaintiff aware any such matters bore any relevance to Plaintiff.  No explanations were ever provided, and no relief, less understanding was enjoyed by Plaintiff.  These Defendants ratified their own acts, and continue to do so by following a course of pointing fingers at one another and/or others, causing further confusion, pain and suffering to Plaintiff.

Plaintiff used a HEWLETT-PACKARD ENTERPRISE (*hereinafter referred to as* "HP") personal computer and printer in 2009, and does so currently.  As recently as May, 2021 Plaintiff

again had problematic issues with HP equipment for which she was billed after seeking technical

support from HP.

As a direct and proximate cause of the information contained in the emails, or spam which

was emailed to Plaintiff, Plaintiff's life has been placed in danger.  As such, Plaintiff alleges HP,

CENTERPOINT and ULA are liable to Plaintiff for intentional infliction of emotional distress.

Defendants could, and should have approached Plaintiff to advise a data breach had occurred, but

instead Defendants ratified its actions rather than mitigating.

**The Restatement (Second) of Torts, section 46**, states:

> *(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another he is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.*

> *(2) Where such conduct is directed at a third person, **the actor is subject to liability if he intentionally or recklessly causes severe emotional distress:***

>> *(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or*

>> *(b) **to any other person who is present at the time**, if such distress results in bodily harm.*

>> *Intentional Infliction of Emotional Distress involves outrageous and extreme conduct that goes beyond the bounds of human decency and causes harm to another.  In order for an act or acts to rise to the level of "emotional distress" they must far surpass mere insults, annoyances, indignities and other trivialities.*

>> *The conduct must be regarded as atrocious and beyond the bounds tolerated in a civilized society.  The act(s) must be so egregious that a reasonable and prudent human being would be unable to tolerate such conduct.* (www.personal-injury-info.net/infliction-emotional-distress.htm; 2012)

The unlawful acts of Defendants herein have been committed knowingly, intentionally,

willfully, maliciously, recklessly, and with wanton disregard for human life to such degree the acts

constitute intentional infliction of emotional distress.  <u>See</u> The Restatement (Second) of Torts,

Section 46; Restatement (Third) of Torts.

8

Here, Plaintiff is compelled to assert that at no time did she ever imagine *anything* she had experienced, either personally or professionally, or any affiliations she has had could ever anger any individual or corporate entity to the point they—Defendants—would yearn to, and successfully have, bankrupted Plaintiff, *while* terrorizing her.  Even as Plaintiff legally attempted to recoup constant losses, legal documents she prepared were tampered with while using her $6,000 HP computer.

The damage to Plaintiff's personal property in that matter was an amount in excess of $250,000.00, suffered at or around the same period of time, although her claim therefor was never adjudicated due to constant harassment.  Utility poles on and around the area where Plaintiff resides are owned by CENTERPOINT ENERGY, INC. (*hereinafter referred to as* "CENTERPOINT").

1. Plaintiff has experienced repeated and ongoing interference with telecommunications, telecommunications equipment, as well as power outages and surges.

2. Plaintiff physically relocated as a result of threats and retaliatory acts made against her, at great expense, for over a full year.

3. In turn, Plaintiff was forced to sell assets valued in excess of $1.6MM for a fraction of the value of said assets.

4. Dating back to on or about 2002, (1) A bank in Dallas, Texas phoned asking when Plaintiff intended to pay for a computer the bank informed  Plaintiff she had purchased on the internet, of which Plaintiff had no knowledge; (2) Plaintiff requested copies of the loan documents for the purchase, whereupon it was observed the purchaser used the name "Ima Kahn"; (3) Very shortly thereafter a credit card company telephoned Plaintiff and advised

Plaintiff's credit card had been used in Russia on two occasions;  (4) Plaintiff verified she
was not attempting to purchase anything in Russia, nor was Plaintiff physically in Russia;
and (5) Heard nothing further about either incident, but is aware of an incident which may
have caused retaliatory acts in this instance as well.

5.  Plaintiff received repeated nefarious and harassing telephone calls, predominantly from
Alabama and Florida.

6.  Plaintiff sought the advice of an expert in matters pertaining to technology, computer
hacking—a forensics specialist, but each individual with whom Plaintiff consulted, or tried
to consult, had motives which were not in Plaintiff's interest.

7.  Perhaps most disturbing still is that named Defendants herein knew Plaintiff's family, if
not Plaintiff, therefore causing Plaintiff even greater pain and suffering.  Moreover, ULA,
in particular, is apparently a contractor for numerous agencies, possessing vast resources,
and the ability to crush virtually any individual.

8.  Plaintiff further asserts that as long as the information contained in the March 2009 emails
she was sent, *or* "Data Breach" remains unresolved, Plaintiff's life remains in danger,
through no fault of Plaintiff.

VI.

<u>CAUSES OF ACTION</u>

Plaintiff's complaint is filed to seek relief from ongoing harassment and the reckless,
malicious acts which have been committed intentionally, willfully and knowingly with wanton
disregard for human life, all of which equate to the legal tort known as Intentional Infliction of
Emotional Distress; To Recover actual damages; Recover for pain and suffering, emotional
distress sustained by Plaintiff; and Punitive Damages sustained by Plaintiff as the direct and

proximate cause of threats, fraud; fraudulent concealment; fraudulent concealment by use of the internet; obstruction of justice; conspiracy to commit fraud; and conspiracy to deprive Plaintiff of her constitutionally protected rights which include, but are not limited to gross violations of Plaintiff's First, Fourth and Fifth Amendments to the United States Constitution, as well as 18 U.S.C. §241 – Conspiracy Against Rights.

In sum, the behavior represents serious unlawful acts which, have caused Plaintiff staggering financial losses, probable irreversible physical injury, devastating and often debilitating emotional pain and suffering, all of which Plaintiff's adult son has sustained as well.

Plaintiff alleges Defendants acts and/or omissions, whether intentional or unintentional, impliedly or expressly, have knowingly and intentionally, even openly, engaged in conduct in a manner so outrageous Plaintiff could never even imagine.  Such egregious conduct as that which Plaintiff has experienced is not tolerated in a civilized society.

**Intentional Infliction of Emotional Distress-**

*...Conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. ...*

See §46, Restatement (Third) of Torts.

While Plaintiff has not named any individual's names, Plaintiff alleges corporate officers, employees, agents, representatives, contractors, successors, heirs and/or assigns of HP, ULA, CENTERPOINT, and/or others have knowingly and willfully engaged in a conspiracy against Plaintiff's rights pursuant to 18 U.S.C. §241 – Conspiracy Against Rights:

*If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured him by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or on the premises of another with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—They shall be fined under*

11

*this title or imprisoned not more than ten years, or both; and if death results from the actions committed in violation of this section... or an attempt to kill, they shall be fined under this title or imprisoned for any term of years, or for life, or both, or may be sentenced to death.*

While Plaintiff has diligently made efforts to solve this *"retribution puzzle,"* with "retribution" being an overt indication of intent, Plaintiff has been placed under extreme duress, although Plaintiff's efforts reveal an elaborate, powerful group of related individuals and corporate entities who have acted in a retaliatory manner against her. Plaintiff has been posited into an adversarial position, forced to discover the *"whodunit"* of the matter made the basis of this lawsuit.

Fearful of further retaliatory acts, Plaintiff ceased to pursue reimbursement related to damages lawfully owed her which are set out in the Affidavit attached hereto, which is incorporated by reference herein as though fully set forth at length.

Plaintiff alleges Defendant ULA has likely unlawfully surveilled her for well over a decade, and repeatedly, and continuously committed acts which have generated retaliatory acts when Plaintiff expressed herself pursuant to the First Amendment to the Constitution while using the internet; and violated her Fourth and Fifth Amendment rights pursuant to the Constitution of the United States; and have conspired to interfere with Plaintiff's right to live freely and unencumbered in these United States.

Defendants HP, CENTERPOINT, and ULA knew, or should have known Plaintiff was in danger, but failed to warn her, and failed to make recompense or take remedial measures to end what it and/or others put into motion.

CENTERPOINT knew, or should have known Plaintiff was being harassed and unlawfully surveilled by all means, as well as the unlawful acts of other bad actors, whether they be corporate entities or individuals related thereto, but failed to warn Plaintiff.

CENTERPOINT knew, or should have known that certain nefarious uses of its power lines and/or utility poles was possible, if not probable, and knew of the dangers to human life, but failed to warn Plaintiff; failed to exercise caution; and acted in breach of the Texas DTPA (*citation omitted*); and engaged in negligent hiring practices; made false representations; failed to properly supervise its employees, agents, representatives, contractors, assigns and/or heirs.

ULA, HP and CENTERPOINT have acted with negligence and/or gross negligence and are liable to Plaintiff for those acts.  Defendants are jointly and severally liable to Plaintiff for damages she has sustained to her person and property, including but not limited to other unnamed parties.

HP, CENTERPOINT and ULA are jointly and severally liable to Plaintiff for damages sustained to her person and property, possibly including other unnamed parties herein.

ULA and CENTERPOINT are liable to Plaintiff for conspiring against Plaintiff's ability to exercise her rights.

Defendants herein are liable to Plaintiff for Intentional Infliction of Emotional Distress.

VII.

## DAMAGES SOUGHT

Plaintiff seeks actual damages in the sum of TWO MILLION DOLLARS.

Plaintiffs seeks punitive damages in the sum of ONE BILLION DOLLARS.

Plaintiff seeks costs of court.  Plaintiff reserves the right to amend her pleadings as necessary.

VIII.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays her actual damages

be granted; That Plaintiff's punitive, *or* exemplary damages be granted; That Plaintiff's costs of

Court be in all things granted; and for any and other such further relief to which this Court deems

just, equitable, and necessary.

Respectfully submitted,

/S/
_____

Michele L. Hondros, *Pro Se*
1311 Antigua Lane
Houston, Texas 77058
(713) 562-2490
Aprilthemis6024@gmail.com

PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE L. HONDROS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| HEWLETT PACKARD | § | |
| ENTERPRISE, | § | |
| CENTERPOINT ENERGY CORP., | § | |
| UNITED LAUNCH ALLIANCE, LLC, | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF
PLAINTIFF'S ORIGINAL COMPLAINT

§
**AFFIDAVIT** §
§

**BEFORE ME**, THE UNDERSIGNED AUTHORITY did appear personally Michele L.

Hondros on this 16th day of June, 2021, and state upon her oath that she is over the age of

twenty-one years, is competent to make this Affidavit, and has personal knowledge of the

statements she makes herein which are true and correct to the best of her ability:

"On or about 1998, I made a comment about a legal proceeding after I retained Frank W.

Mitchell to represent me in an unrelated matter, although I had worked for Mr. Mitchell through

early 1990.  While visiting his office to discuss the legal matter for which I had retained him, he

brought up, and bragged about a case he had against British Petroleum.  He showed me

newspaper articles and clippings where his name was mentioned.  I was unaware of who he was

1

representing, however I now know that appears to have been BAO *or* British American Offshore. Because I had great friends who were Expats in the employ of BP, we remained in contact by email and phone and visited when they returned to Houston from time to time. I made a comment to my friend's husband about the lawsuit which I told him I had heard about, and which—I was told-- was not going to go well for BP. Normally I would have been speaking with his wife, with whom I was close, but on that particular day, her husband answered the telephone while they were, if memory serves, in Azerbaijan. The only knowledge I had about that case was what Mr. Mitchell had shown me, which ethically, was inappropriate on his part. The particular, and seemingly innocuous comment I made to a friend apparently had the makings, based on the retaliatory response I have been the recipient of, an international incident of some nature. I didn't even know what my friend, Hugh McDowell's, title was at BP. Now, I am aware that the last time I saw the couple in 2009, he was In-Country Manager for BP in Libya. However, job titles, descriptions nor money were never much discussed among any of us. We lived close to one another while they resided in Houston and our children attended the same school. I would characterize our friendship as close. As an Expat, one of her favorite posts was Buenos Aires where an open invitation to visit was extended. Maria Elena "Merle" McDowell was a dear friend who passed away in 2013 after a lengthy bout with breast cancer.

After I relocated in 2007, I discovered my personal belongings, which had been packed, moved and stored by a moving company, had been seriously, and in some cases irretrievably damaged. Those damages totaled over $250,000.00. When the company would not replace the damaged items or compensate me for any sum to replace the irretrievably damaged items I filed suit against them. I had the same problem with a real estate agent by the name of Dorit Golan-Cullen who resided in Meyerland on Atwell Street. She had undervalued my property, at a

minimum, of $150,000.00.  I filed suit against her and her agency, Keller Williams.  I was unable

to respond to a document production using my HP 640 Fax machine due to constant and repeated

technical difficulties.  I also mention Keller Williams here because another Keller Williams real

estate sales person by the name of Marianne Shugrue, with whom I had also shared what I

thought was a close friendship, suddenly appeared at my residence.  I told her about the internet

problems I was experiencing and at the time, I likely referred to the horrifying emails I received,

while trying not to think too much about that issue.  Nonetheless, she seemed to be aware of the

incident, and insisted I needed to use a wireless internet provider.  I was extremely distraught at

the time, but Ms. Shugrue proceeded to attempt to set my computer up for wireless service, after

first asking me whether I wanted to "save" anything on my computer, which was of particular

note because there was at least one additional email that I was unable to print at the time, but

same was still on my PC.  Shugrue worked for a different Keller Williams agency than did Dorit

Golan-Cullen, but at that time I once again took her overture as that of a friend.  My 'friend' was

not visiting me to assist with my PC problems, rather it would seem she was visiting to destroy

evidence.

On or about 2007 I purchased an HP Touch Smart computer at a cost of approximately

$6,000, and an HP All-In-One Printer.  The printer would prompt as though something was

queued to print at all hours, and when nothing had been queued to print by me.  In hindsight, it

seems I may have been, despite the 2009 incident, the subject of something I understand to be

possible, which is known as a 'backdoor hack."

Shortly after I discovered the damage to my personal effects when moving, I began

speaking with the mover and its insurance carrier.  During that same period of time that I filed

suit against Keller Williams, I received mail which included a full-page ad from The Financial

Times.  The ad bore a handwritten note which was addressed to me, stating, "Michele, Get it.  It works!" (The ad was for a wound care cream that was made in Russia; I was recovering from a broken wrist and elbow, and infection known as the flesh-eating disease at the time.)  Other items I was mailed included something post-marked on April 1st which contained a business card that stated: "Keep my card.  I fix everything."  That item arrived the day after my computer crashed, which was April Fool's Day.  So, along with the internet-based nefarious activity I was being harassed and taunted from what seemed to be every direction.

On or about March of 2009 the computer and other telecommunications problems I experienced reached a tipping point when, as previously stated, my computer crashed, rendering me unable to prepare necessary documents to recover the losses I sustained, as stated hereinabove.  My HP Printer malfunctioned, as did my fax machine.  When the $6,000.00 HP Touch Smart personal computer I purchased malfunctioned on several occasions, I subscribed to, and paid a monthly fee for premium technical support service with HP. On at least one instance, such was done by remote access by individual(s) in Pakistan and New Delhi.  The constant barrage of technical difficulties I experienced prevented me from legally recovering those actual damages, as such was obstructed by HP and/or other technical issues related to my use of HP products.  During the same period calls I made to my bank and other business services were always answered by individuals in Pakistan or New Delhi.

On or about 2007 or 2008, I received several telephone calls from a woman who spoke with a Middle Eastern accent who said she was trying to reach her son.  I had no idea whom she was asking about.  After the third or fourth call, I told her never to call me again, and advised I did not know her or her son. She claimed to be residing in Florida, which a check of the area

4

code indicated was accurate, although I now know there are any number of ways to cause one to appear they are located in a particular area when in fact they are not.

After the 2009 email incident, I sought a computer forensics expert to assist me in identifying what had taken place, and who had sent me the emails with the terrifying content, however the individual whom I consulted was not who he represented himself to be.  He went by the name of Ken Baja, who was not an *independent* computer forensics expert, which I only recently learned.

By 2011 I moved out of my residence and shared a leased apartment at The Gables off Kirby Drive with my son.  I was forced to sell annuities for a fraction of their worth just to get away from my own home hoping to find some peace and relief.

Further, it seems of late that "stingray" device(s) is being used near my residence causing constant interruptions with my cellular telephone communications and wireless internet service. The Stingray device is likely to be a product made by a L3 Technologies, now L3 Harris, which is led by Christopher Kubasik (presently Chief Operating Officer of L3 Harris Technologies), a former CEO of Lockheed.  The emails, or spam I received in 2009 were sent via a Level3 router. I was unaware until quite recently that Level3 was a business concern, and mistakenly believed a Level3 router was a reference to some level of the internet.

Just weeks ago I was locked out of my HP laptop. I contacted HP for tech support and was immediately over-charged for the tech consult.  The battery is no longer operable, although the batteries to the other laptop computers I own are not operable either.  I have experienced numerous and repeated power surges and power outages, which would be attributable to Centerpoint Energy.  At some time in 2009 or 2010 while staying at 1810 Linfield Way, the former residence of my parents, she and I detected a natural gas leak.  The man who arrived to

repair the apparent gas leak misrepresented himself, as he did not comport himself in a manner indicating he was affiliated with Centerpoint, and definitely did not seem to have arrived with the intent of simply addressing same. Rather, his demeanor was threatening, which frightened both my mother and myself.

Personal property which specifically includes jewelry and small collectibles totaling approximately $30,000.00 has been stolen from my home over an extended period of time, and on every single occasion my home has been unattended.

There has been more than ample time and opportunity for the constant, and often dangerous harassment to stop. There has been more than ample time for those responsible for interrupting my electronic communications, and sending me horrifying emails to come forward, but no one has done so. Therefore, I am left to either resign myself to a situation which is beyond untenable that has become dangerous, not all of which said situations are enumerated herein, or file for relief in court. I am choosing to fight for relief in court.

FURTHER AFFIANT SAYETH NAUGHT."


**SUBSCRIBED AND SWORN TO BEFORE ME** the undersigned authority on this 16th day of June, 2021.

Michele L. Hondros

NOTARY PUBLIC

JESSICA MARIE RISHER
Notary ID #129156651
My Commission Expires
November 6, 2024